**Tagged Opinion**



**ORDERED in the Southern District of Florida on March 15, 2011.**

*[signature]*

                                                **Erik P. Kimball, Judge**
                                    **United States Bankruptcy Court**

_____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

| | |
|---|---|
| In re: | Case No. 10-37591-EPK |
| CESAR A. ELIBO, | Chapter 13 |
|     Debtor. | |
| _____/ | |

**ORDER DENYING DEBTOR'S MOTION TO EXTEND MORTGAGE BEYOND THE CHAPTER 13 PLAN IN DEBTOR'S NON-HOMESTEAD INVESTMENT PROPERTY**

THIS MATTER came before the Court for hearing on February 10, 2011 upon the *Debtor's Motion to Extend Mortgage Beyond the Chapter 13 Plan in Debtor's Non-Homestead Investment Property* [DE 52] (the "Motion") and the *Memorandum of Law in Support of the Debtor's Motion to Permit Relief Under 11 U.S.C. § 1322(b)(2) and (b)(5) Conjunctively* [DE 56] (the "Memorandum") filed by Cesar A. Elibo (the "Debtor"), and *Deutsche Bank's Response in Opposition to Debtor's Motion to Extend Mortgage Beyond the Chapter 13 Plan* [DE 55] (the "Response") filed by Deutsche Bank National Trust Company, as Trustee of the IndyMac INDX

Mortgage Loan Trust 2006-AR29, Mortgage Pass-Through Certificates, Series 2006-AR29, under the Pooling and Servicing Agreement dated September 1, 2006 (the "Creditor").[1] In the Motion, the Debtor seeks approval of provisions of the Debtor's chapter 13 plan that (a) modify under 11 U.S.C. § 1322(b)(2) the allowed secured claim of the Creditor, previously bifurcated under 11 U.S.C. § 506(a), by reducing the interest rate, and that (b) extend payments to the Creditor beyond the five year term of the plan under 11 U.S.C. § 1322(b)(5). The Court has considered the Motion, the Debtor's Memorandum, the Creditor's Response, and the arguments of counsel at the hearing.

On September 15, 2010, the Debtor filed a voluntary petition for relief under chapter 13 of title 11 of the United States Code. The Debtor owns real property located at 5686 Elder Drive, West Palm Beach, Florida 33415 (the "Property"). The Creditor holds a first mortgage on the Property. Pursuant to agreement of the parties, the court valued the Property at $88,339.00 and, under 11 U.S.C. § 506(a), bifurcated the Creditor's claim into a secured claim of $88,339.00 and an unsecured claim of $111,661.00.

Prior to commencement of this case, the Debtor was required to make monthly payments to the Creditor in the amount of $1,346.35, comprising principal and interest at the rate of 7.25% per annum. As of the petition date here, the Debtor was in arrears in the aggregate amount of $25,727.79.

On January 13, 2011, the Debtor filed an amended chapter 13 plan [DE 43] in which he proposes to pay the Creditor monthly payments of $487.81, at an interest rate of 5.25% per

---

[1] Deutsche Bank National Trust Company, as Trustee, filed the Response and an objection to confirmation of the Debtor's chapter 13 plan, alleging that it holds a first mortgage on the real property referred to in the Motion. However, OneWest Bank, FSB filed a proof of claim in this case indicating that it holds the first mortgage on the subject property, which it alleges it obtained from IndyMac Bank, FSB. The Debtor and OneWest Bank, FSB previously entered into an agreement valuing the property subject to the first mortgage. The Debtor's Motion and the most recent amended plan refer to the first mortgage holder as IndyMac Mortgage Services. No party disputes that Deutsche Bank National Trust Company, as Trustee, is the appropriate party in interest in this matter.

annum, extending beyond the term of the plan until the principal amount of $88,339.00, the Creditor's allowed secured claim, is paid in full.  In other words, the Debtor proposes to re-amortize the Creditor's allowed secured claim of $88,339.00 over a period of time that extends beyond the term of the plan, at a reduced interest rate, resulting in a significantly reduced monthly payment.  In conjunction with the Debtor's amended chapter 13 plan, the Debtor filed the Motion requesting a ruling that such plan treatment is permissible under applicable provisions of the Bankruptcy Code.

In the Response, the Creditor argues that the Debtor cannot both modify the Creditor's claim under section 1322(b)(2) and also extend the resulting payments beyond the plan term under section 1322(b)(5).  The Creditor argues that in order to rely on section 1322(b)(2), the Debtor may modify the terms of the parties' pre-petition credit arrangement, including the interest rate (subject to section 1325(a)(5)), but that all payments must be completed within the five year plan period.  The Creditor argues that the Debtor may, in the alternative, rely on section 1322(b)(5) and maintain monthly payments at the pre-petition amount of $1,346.35 and subject to the pre-petition interest rate of 7.25%, and only then can the stream of payments extend beyond the plan term.  The Creditor also argues that if the Debtor seeks to rely on section 1322(b)(5) his plan needs to address cure of arrears in the amount of $25,727.79.

Under section 1322(b)(2), a chapter 13 plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims."  The Property is not the Debtor's principal residence and, therefore, the Debtor may rely on section 1322(b)(2) to modify the rights of the Creditor.  A debtor may use section 1322(b)(2) in a number of ways to modify a creditor's rights, including reducing monthly

3

principal and interest payments.  Simply bifurcating a secured creditor's claim under section 506(a) involves the modification of a creditor's rights under section 1322(b)(2).  *See Nobelman v. Am. Sav. Bank,* 508 U.S. 324, 332 (1993).

For a debtor whose monthly income equals or exceeds the applicable median family income, "the plan may not provide for payments over a period that is longer than 5 years."  11 U.S.C. § 1322(d).  For a debtor whose monthly income is less than the applicable median family income, "the plan may not provide for payments over a period that is longer than 3 years, unless the court, for cause, approves a longer period, but the court may not approve a period that is longer than 5 years."  *Id*.  In general, a chapter 13 plan must provide for full treatment of creditors within the three or five year plan term.

A debtor may use section 1322(b)(5) to "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due."  Section 1322(b)(5) provides an implicit exception to the five year requirement of section 1322(d) because it "necessarily presupposes maintenance payments extending beyond the length of the plan."  *In re Stivender*, 301 B.R. 498, 500 (Bankr. S.D. Ohio 2003).  Section 1322(b)(5) is available to the Debtor in this case because the original maturity date of the Creditor's debt falls after the end of the Debtor's five year plan term.

The question presented is whether the Debtor may use both section 1322(b)(2), to modify the rights of the Creditor by bifurcating its claim under section 506(a) and reducing the applicable interest rate, and section 1322(b)(5), to extend payment of the Creditor's allowed secured claim beyond the five year term of the Debtor's plan.

Some courts have held that sections 1322(b)(2) and 1322(b)(5) are mutually exclusive, that they cannot be applied with regard to the same claim in a chapter 13 plan. *In re Enewally*, 368 F.3d 1165, 1172 (9th Cir. 2004); *Stivender*, 301 B.R. at 500. In *Enewally*, the Ninth Circuit held that "a debtor may not use § 506(a) in combination with § 1322(b)(5) to reduce the secured claim and repay it over a period longer than the plan term." *Enewally*, 368 F.3d at 1172. In reaching this conclusion, the Ninth Circuit ruled that section 1322(b)(2) "does not allow a modified secured debt to be paid over a period of time longer than the plan term." *Id.*; *accord Stivender*, 301 B.R. at 500 ("the invocation of § 1322(b)(5)'s cure and maintain provision does not change the fact that § 1322(b)(2)'s strip and pay provision is subject to the five year limitation of § 1322(d)").

Other courts have ruled that a debtor may use sections 1322(b)(2) and 1322(b)(5), together, to treat the same claim in a chapter 13 plan. *See, e.g., Fed. Nat'l Mortg. Ass'n v. Ferreira (In re Ferreira)*, 223 B.R. 258, 261 (D.R.I. 1998). The plain language of section 1322(b) "lists the provisions that may be included in a plan and connects them with the conjunctive 'and' thereby indicating that a plan may include provisions of the kind referred to in any two or more of those subsections, including (b)(2) and (b)(5)." *Id.*; *see also* Keith M. Lundin & William H. Brown, CHAPTER 13 BANKRUPTCY, 4TH EDITION, § 128.2, at ¶10, Sec. Rev. June 14, 2004, www.Ch13online.com ("On the face of the statute, there is nothing in § 1322(b) to suggest that its subsections are mutually exclusive.").

This Court agrees that sections 1322(b)(2) and 1322(b)(5) are not mutually exclusive. However, in order to use subsection (b)(2) in conjunction with subsection (b)(5), the debtor must modify the rights of the creditor *without* changing the repayment terms of the loan. "A change in the amount of the monthly payments hardly constitutes 'maintenance of payments.'" *In re*

5

*McGregor*, 172 B.R. 718, 721 (Bankr. D. Mass. 1994). A leading chapter 13 treatise addresses the issue as follows:

> One limitation on combining the power to modify in § 1322(b)(2) with the power to cure and maintain payments in § 1322(b)(5) that is clearly found in the statute is that the plan cannot modify the mortgage in a way that conflicts with the "maintaining payments" requirement in § 1322(b)(5). The meaning of "maintaining payments" in § 1322(b)(5) becomes critically important. From the reported decisions, maintenance of payments in § 1322(b)(5) means that the debtor must respect the interest rate and the monthly payment in the mortgage contract during the plan and after completion of payments to other creditors under the plan.
>
> Chapter 13 debtors sometimes become confused about the meaning of maintaining payments when a home mortgage is not protected from modification and the debtor is unable to pay the allowed secured portion in full during the three-to five-year plan. Debtors have tried to split the mortgage under § 506(a) and to then modify the allowed secured portion for payment beyond the life of the plan on terms that are different from the interest rate and monthly payment in the original contract. The courts have uniformly prohibited debtors from "re-amortizing" the allowed secured claim of an unprotected mortgage holder for payment beyond the life of the plan. Put another way, claim splitting under § 506(a) is not inconsistent with curing default and maintaining payments under § 1322(b)(5); changing interest rate or monthly payment is.

Lundin & Brown, CHAPTER 13 BANKRUPTCY, 4TH EDITION, § 128.2, at ¶¶12-14.

According to Judge Queenan in *McGregor*, a debtor may propose a plan that cures defaults and maintains payments of a bifurcated secured claim without violating any provision of section 1322(b):

> The Debtor may nevertheless take advantage of 1322(b)(5) by keeping the same 10.5% contract rate and making the same payments of principal and interest called for by the note during the life of the plan and during such further period of time as is necessary to have the total principal payments equal the amount of the secured claim as valued by this court. There would then be "maintenance of payments." And those payments would be maintained on the "secured claim" as that claim is computed in accordance with section 506(a). The three to five year limitation on plan payments of section [1322(d)] would then have no application because section 1322(b)(5) permits payments lasting longer than five years. It speaks of maintenance of payments on a claim "on which the last payment is due after the date on which the final payment under the plan is due."
>
> It is true that *Nobleman* holds a proposal of payments pursuant to bifurcation

> constitutes modification of the "rights" of the holder of the secured claim within the meaning of section 1322(b)(2). Presumably, if only subsection (b)(2) were applicable, the payments would have to be completed within five years. But subsection (b)(5) provides independent support for such a plan. Subsection (b)(5) does not require the plan proponent to avoid modification of the "rights" of the secured claim holder. Its command is complied with so long as payments are maintained on the "secured claim." The amount of the secured claim is determined by valuation pursuant to section 506(a). This wording avoids the fine distinction made in *Nobleman,* based on the wording of subsection (b)(2), between modification of the "rights" of a secured claim holder and modification of the "secured claim." Subsection (b)(5), moreover, provides that its provisions control "notwithstanding paragraph (2) of this subsection."

*McGregor*, 172 B.R. at 721; *accord Ferreira*, 223 B.R. at 262 ("[A]lthough bifurcation may modify a creditor's 'rights' within the meaning of subsection (b)(2), it does not preclude application of subsection (b)(5) when payments are 'maintained' in accordance with the terms of the original indebtedness."); *In re Pruett*, 178 B.R. 7, 9 (Bankr. N.D. Ala. 1995) (adopting the reasoning in *McGregor*).

The Court agrees with the reasoning in *Ferreira* and *McGregor* that to the extent section 1322(b)(2) is implicated by claim bifurcation under section 506(a), a debtor may employ subsections (b)(2) and (b)(5) together to modify the rights of a secured creditor and cure and maintain payments beyond the life of the plan until the allowed secured claim is paid in full. However, a debtor may not modify the interest rate on a loan and extend payments beyond the life of the plan under section 1322(b)(5). Such plan treatment may only be accomplished under section 1322(b)(2) and the time restrictions of section 1322(d) would apply.

In this case, the proposed treatment of the Creditor's secured claim violates section 1322(b)(5) and thus the Debtor's amended plan cannot be confirmed. If the Debtor wishes to pay the Creditor's allowed secured claim in the amount of $88,339.00 over a period longer than the five year plan term, the Debtor must cure any defaults "within a reasonable time" and maintain the pre-petition monthly payments at the original interest rate until the Creditor's

allowed secured claim is paid in full.[2]  If the Debtor wishes to modify any of the terms of the original debt, other than via bifurcation of the claim under section 506(a), the Debtor must make all payments on the secured claim within the time restrictions of section 1322(d).

With the Court being fully advised in the premises, it is ORDERED AND ADJUDGED that:

1. The Motion [DE 52] is DENIED, and the Creditor's objection to confirmation [DE 44] is SUSTAINED, to the extent not inconsistent with this order.

2. The Debtor may file a further amended plan within 14 days of entry of this order.

3. Creditor's request for an order granting fees and expenses in connection with responding to the Motion and objecting to confirmation is DENIED.

###

Copies furnished to:

All parties of record by the clerk of the Court

---

[2] Note that such treatment would result in accelerated payment of the Creditor's allowed secured claim.  The Debtor would be required to make monthly payments in the pre-petition amount of $1,346.35, and would be required to use the pre-petition interest rate of 7.25% per annum.  However, because the interest rate will be applied against a smaller principal amount - the Creditor's allowed secured claim of $88,339 rather than the pre-petition principal amount - a larger portion of the monthly payment would be applied in payment of principal.  The result is that the Creditor's allowed secured claim would be fully paid over a term shorter than the original term of the debt.